UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAVID COLE, | ) | Case No. 12cv302-AJB (DHB) |
| Petitioner, | ) | **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | ) | |
| MATTHEW CATE, Secretary, | ) | |
| Respondent. | ) | [ECF No. 16] |

On July 16, 2012, Petitioner David Cole, a state prisoner proceeding *pro se*, filed a First Amended Petition for Writ of Habeas Corpus. (ECF No. 16.[1]) Petitioner seeks relief from his June 11, 2008 conviction and his 35 years to life sentence for first degree burglary. Petitioner alleges eight grounds for relief: (1) ineffective assistance of appellate counsel; (2) insufficient evidence to support the jury's verdict/factual innocence; (3) claim of actual innocence warrants an evidentiary hearing; (4) ineffective assistance of trial counsel; (5) violation of right to an impartial jury; (6) the state courts' denials of state habeas petitions were contrary to or an unreasonable application of federal law; (7) the trial court erroneously admitted victim's in-court identification; and (8) the trial court abused its discretion by not striking Petitioner's prior strikes. Respondent filed an Answer opposing any habeas relief

---

[1] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing (ECF) system.

(ECF No. 17), and Petitioner filed a Traverse. (ECF No. 19.) The Court has reviewed the parties' pleadings, the record, and controlling law, and for the reasons discussed below, hereby **RECOMMENDS** that the Petition be **DENIED**.

## I.    BACKGROUND

### A.    Factual Background

The following facts are taken from the unpublished California Court of Appeal Opinion in *People v. Cole*, Case No. D054244 (Cal. Ct. App. Oct. 23, 2009). (Lodgment No. 7.) The Court presumes these factual determinations are correct pursuant to 28 U.S.C.A. § 2254(e)(1).   *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (finding factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary).

At approximately 7:45 p.m. on August 31, 2007, Crystal Guerrero had just finished taking a shower in her apartment located in the Mission Beach neighborhood of San Diego. When she opened the bathroom door, she saw a man push in the screen of her bedroom window and begin to enter the bedroom through the window. The window was approximately 14 feet away from Guerrero, and the bedroom was well lit. Guerrero locked eyes with the man for approximately 10 seconds and could view his upper body. Guerrero screamed for her neighbor, and the man backed away from the window and ran off. Watching through a window, Guerrero could see the man as he left the area.

Guerrero's neighbor and her landlord immediately responded to the screaming and called 911. Guerrero spoke with the 911 operator and gave a description of the perpetrator, and she also gave a description to police officers who arrived at her residence approximately five minutes later. Another witness, Theresa Nakatani, was sitting in a car behind Guerrero's apartment. She saw the perpetrator enter a gate to the apartment building and then run out a short time later.

Based on the description provided by the witnesses, the police apprehended [Petitioner] approximately 17 minutes after the incident while he was walking down the street a few blocks from Guerrero's apartment.

The police then transported [Petitioner] to an alley outside of Guerrero's apartment and conducted an identification procedure referred to as a curbside showup, in which [Petitioner] was displayed for Guerrero to determine if she recognized him. Guerrero identified [Petitioner] as the perpetrator, and [Petitioner] was charged with a single count of residential burglary. (§§ 459, 460, subd. (a), 667.5, subd. (c)(21).)

During motions in limine, defense counsel moved to exclude evidence of Guerrero's identification of [Petitioner] during the curbside showup and any subsequent in-court identification. Relying on Guerrero's testimony at the preliminary hearing, defense counsel argued that the curbside showup procedure was impermissibly suggestive because, prior to displaying

[Petitioner] to Guerrero, the police told Guerrero that she would be viewing a suspect who matched the description she had given and that the suspect was on parole for burglary. The trial court granted the motion to exclude Guerrero's identification of [Petitioner] during the curbside showup, ruling that the police officers' statement to Guerrero rendered the identification procedure unduly suggestive. However, the trial court ruled that it would allow Guerrero to identify [Petitioner] in the courtroom during her trial testimony.  FN2

> FN2. Defense counsel also brought a motion in limine to exclude Nakatani's identification of [Petitioner] during the curbside showup and any in-court identification by her. The trial court granted the motion in full, based on its ruling that the identification procedure was unduly suggestive and on the fact that Nakatani was not able to identify [Petitioner] in the courtroom during an in limine hearing. At trial, upon questioning by defense counsel, Nakatani could not identify [Petitioner] in the courtroom.

> At trial, Guerrero identified [Petitioner] as the perpetrator. On cross-examination, defense counsel elicited testimony from Guerrero that she had also identified [Petitioner] at the curbside showup and during the preliminary hearing.

> [Petitioner's] defense at trial centered on the theory that he had been misidentified. Defense counsel called an expert to testify about witness suggestibility and false identification, and he argued to the jury that none of [Petitioner's] fingerprints or DNA was found at the scene of the crime.

(Lodgment No. 7 at 2-4.)

## B.     Procedural Background

On September 19, 2007, Petitioner was charged in a single count information with residential burglary while someone other than an accomplice was in the home, in violation of California Penal Code §§ 459, 460, and 667.5(c)(21).  (Lodgment No. 3 at 1-2.)  The information also alleged Petitioner had various priors.  (*Id.* at 2-4.)  On June 11, 2008, a jury convicted Petitioner of first degree burglary.  (*Id.* at 122-124.)   Thereafter, Petitioner admitted several prior convictions.  (*Id.* at 317-318.)  On December 3, 2008, Petitioner was sentenced to state prison for a term of 35 years to life.  (*Id.* at 290-291.)

Petitioner appealed his conviction.  (*Id.* at 293; Lodgment No. 4.)  His direct appeal raised two issues: (1) the trial court erred by admitting the victim's in-court identification, and (2) the trial court abused its discretion by not striking his prior strike convictions. (Lodgment No. 4, at 2.)  On October 23, 2009, the Court of Appeal rejected Petitioner's claims. (Lodgment No. 7.)  Petitioner filed a Petition for Review in the California Supreme Court.  (Lodgment No. 8.)  On January 13, 2010, the California Supreme Court summarily

3

denied review. (Lodgment No. 9.)

On August 10, 2010, Petitioner filed a habeas petition in the San Diego Superior Court. (Lodgment No. 10.) Petitioner argued: (1) ineffective assistance of appellate counsel; (2) insufficient evidence supported his conviction; (3) actual innocence and request for evidentiary hearing; (4) ineffective assistance of trial counsel; and (5) denial of right to an impartial jury. (*Id.*) The Superior Court rejected Petitioner's claims on the merits in an unpublished opinion on October 8, 2010. (Lodgment No. 11.) Petitioner then filed a petition for writ of habeas corpus in the California Court of Appeal. (Lodgment No. 12.) On March 22, 2011, the Court of Appeal denied the petition on the merits. (Lodgment No. 15.) Petitioner filed a habeas petition in the California Supreme Court on April 11, 2010. (Lodgment No. 16.) The California Supreme Court summarily denied the petition on December 21, 2011. (Lodgment No. 17.)

On January 31, 2012, Petitioner filed his federal Petition for Writ of Habeas Corpus. (ECF No. 1.) Petitioner initially raised the same claims that had he asserted in his state habeas petitions. (*Id.*) On May 9, 2012, Respondent filed an Answer to the Petition. (ECF No. 9.) Thereafter, Petitioner filed a Motion to Amend the Petition. (ECF No. 14.) Petitioner sought to add the two claims he had asserted on direct appeal. On June 27, 2012, the Court granted the motion to amend. (ECF No. 15.) Petitioner filed the instant First Amended Petition for Writ of Habeas Corpus on July 16, 2012. (ECF. No. 16.) On September 26, 2012, Respondent filed an Answer. (ECF No. 17.) Petitioner filed his Traverse on October 24, 2012. (ECF No. 19.)

## II.    DISCUSSION

### A.    Legal Standard

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") controls review of this Petition. *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a

habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1) and (2); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in United States Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions, but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

"Clearly established federal law" means the law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). "Circuit precedent may provide 'persuasive authority' for purposes of determining whether a state court decision is an 'unreasonable application' of Supreme Court precedent," but "only Supreme Court holdings are binding on state courts, and 'only those holdings need be reasonably applied.'" *Rodgers v. Marshall*, 678 F.3d 1149, 1155 (9th Cir. 2012) (citation omitted); *See also Campbell v. Rice*, 408 F.3d 1166, 1170 (9th Cir. 2005). "[W]hen a Supreme Court decision does not 'squarely address[] the issue . . . it cannot be said, under AEDPA, there is 'clearly established' Supreme Court

precedent addressing the issue," and the federal court "must defer to the state court's decision." *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009). S*ee also Carey v. Musladin*, 549 U.S. 70, 77 (2006) (the lack of holdings from the Supreme Court on the issue presented precludes relief under 28 U.S.C. § 2254(d)(1)).

In applying 28 U.S.C. § 2254(d)(2), federal habeas courts must defer to reasonable factual determinations made by the state courts, to which a statutory presumption of correctness attaches. 28 U.S.C. § 2254(e)(1); *see Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007). To determine whether habeas relief is available under § 2254(d), the Court "looks through" to the last reasoned state court decision as the basis for its analysis. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-8-3 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), *overruled on other grounds by Andrade*, 538 U.S. at 75-76; *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

## B.    Claim One: Ineffective Assistance of Appellate Counsel

Petitioner's first claim is that his appellate counsel was ineffective for failing to raise all arguable issues on direct appeal. (ECF No. 16 at 4-9.) Respondent counters that the state courts properly rejected Petitioner's claim because he failed to establish either prong of the *Strickland* test for ineffective assistance of counsel. (ECF No. 17 at 10-13.) For the reasons set forth below, the Court agrees with Respondent.

Petitioner presented his ineffective assistance of appellate counsel claim to the California Supreme Court, and it was denied without comment. (Lodgment Nos. 16 and 17.) The Court will therefore look through the silent denial to the last reasoned decision, which is the Court of Appeal's March 22, 2011 opinion. *Ylst*, 501 U.S. at 804. The Court of Appeal rejected Petitioner's argument that his appellate counsel was ineffective. The Court of Appeal explained:

> [Petitioner] claims appellate counsel was ineffective for failing to raise the issues that the evidence was insufficient to support his conviction and that

he is factually innocent.  To succeed on a claim of ineffective assistance of counsel, the petitioner must show that counsel provided representation that was deficient in falling below an objective standard of reasonableness under prevailing professional norms, and that there is a reasonable probability that but for counsel's failings the petitioner would have received a more favorable result.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)

The record shows the crucial issue at trial was the identity of the person who climbed into Crystal Guerrero's bedroom window on August 31, 2007. Guerrero gave a description of the perpetrator to the 911 operator and to police within minutes of the incident.  Based on Guerrero's description and descriptions by other witnesses, the police apprehended [Petitioner] about 17 minutes after the incident while he was walking down the street a few blocks from Guerrero's home.  Guerrero testified she "absolutely" remembered what the perpetrator looked like and identified [Petitioner].  [Petitioner's] defense was he had been misidentified and emphasized that his fingerprints and DNA were not found at the scene. [Petitioner] presented expert testimony on witness suggestibility and false identification. The jury believed Guerrero. [Petitioner] has not shown that if counsel had challenged the sufficiency of the evidence on appeal, there is a reasonable probability that a reviewing court would have reversed his conviction.  Nor has [Petitioner] presented any new evidence to support his claim that he is factually innocent.

(Lodgment No. 15.)

The clearly established United States Supreme Court precedent governing ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Baylor v. Estelle*, 94 F.3d 1321, 1323 (9th Cir. 1996) (stating that *Strickland* "has long been clearly established federal law determined by the Supreme Court of the United States").  Under *Strickland*, Petitioner must show both incompetence of counsel and prejudice in order to justify issuance of the writ.  *Strickland*, 466 U.S. at 688.  However, the court need not address both prongs if the petitioner fails to make a sufficient showing of either one.  *Id.* at 697.

A petitioner can establish incompetency by showing counsel's performance fell below an objective standard of reasonableness.  *Id.* at 688.  However, judicial scrutiny of counsel's performance should be highly deferential.  *Id.* at 689.  There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  *Id.* at 686-87.  Furthermore, where the ineffective assistance claim is based on appellate counsel's failure to raise viable issues, the presumption of reasonableness is even stronger because appellate counsel has wider discretion than trial counsel in weeding out weaker issues, and

doing so is widely recognized as one of the hallmarks of effective appellate assistance. *Smith v. Robbins*, 528 U.S. 259, 288 (2000); *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). *See also Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Appealing every arguable issue would do a disservice to a petitioner because it would draw an appellate judge's attention away from stronger issues and reduce appellate counsel's credibility before the appellate court. *Miller*, 882 F.2d at 1434. Appellate counsel, therefore, has no constitutional duty to raise every nonfrivolous issue requested by a petitioner. *Jones*, 463 U.S. at 751.

A petitioner can establish prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. *See also Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). With respect to claims of ineffective assistance of appellate counsel, this means that a petitioner must demonstrate he would have prevailed on appeal absent counsel's errors. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986)).

"Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (reversing a Ninth Circuit en banc grant of habeas relief on an ineffective assistance claim for lack of sufficient deference to the state court result). "[T]he question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id. See also Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) ("We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'") (citation omitted). The petitioner "must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Here, Petitioner contends his appellate counsel was ineffective for failing to raise on direct appeal all the claims he presents in the instant habeas petition. (*Id.* at 6-9, 54.) Specifically, Petitioner argues his appellate counsel failed to raise actual innocence,

1   insufficiency of the evidence, ineffective assistance of trial counsel, and denial of the right

2   to an impartial jury.

3        The Court of Appeal only addressed Petitioner's contention that his appellate counsel

4   failed to raise the issues of actual innocence and insufficient evidence. The court determined

5   Petitioner's allegations failed to rise to the level of ineffective assistance under *Strickland*.

6   As discussed below, this Court finds neither of these allegations warrant relief (*see infra*,

7   section II.C), and given that appellate attorneys are given even greater deference than trial

8   attorneys with respect to the issues they raise (*Miller*, 882 F.2d at 1434), the Court finds the

9   state court's decision was not objectively unreasonable. As the Court of Appeal noted, there

10  was sufficient evidence to support Petitioner's conviction based on the victim's testimony.

11  It appears Petitioner's appellate counsel decided to challenge the admission of that testimony

12  rather than challenge the sufficiency of the evidence as a whole. This was a reasonable

13  tactical decision by counsel, and is entitled to deference. Also, as noted by the Court of

14  Appeal, Petitioner did not have any new evidence to support his actual innocence claim.

15  Petitioner argues there was no fingerprint or DNA evidence connecting him to the scene of

16  the crime. However, those facts were presented to the jury. (*See* Lodgment No. 1 at 543-

17  44.) Therefore, they are not new evidence. Therefore, the Court finds the state courts

18  reasonably determined Petitioner failed to state a cognizable claim for ineffective assistance

19  of appellate counsel based on counsel's failure to raise actual innocence or insufficiency of

20  the evidence.

21       The Court notes that the state courts did not specifically discuss Petitioner's contention

22  that his appellate counsel failed to raise the issues of ineffective assistance of trial counsel

23  and denial of the right to an impartial jury. Therefore, as to those issues, the Court must

24  conduct an independent review of the record to determine whether the state court's decision

25  is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See*

26  *Delgado*, 223 F.3d at 982; *accord Himes*, 336 F.3d at 853. "[A]lthough we independently

27  review the record, we still defer to the state court's ultimate decisions." *Pirtle*, 313 F.3d at

28  1167.

Upon review of the record, the Court finds Petitioner is unable to demonstrate his appellate counsel rendered ineffective assistance for failing to raise these latter two claims. First, Petitioner has not established appellate counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Petitioner asserts his appellate counsel should have raised the ineffective assistance of trial counsel and jury misconduct claims on appeal. However, appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by the defendant. *See Jones*, 463 U.S. at 751-54; *Miller*, 882 F.2d at 1434 n. 10. Further, as set forth in detail below, Petitioner's ineffective assistance of trial counsel and denial of right to impartial jury claims have been rejected by this Court and the state courts. (*See infra* section II. E and F; and Lodgment Nos. 11 and 15.) Therefore, it was not objectively unreasonable for appellate counsel not to pursue these claims. *See Miller*, 882 F.2d at 1434 n. 9 (citing *Strickland*, 466 U.S. at 688, 694). Moreover, Petitioner has not shown that he was prejudiced because there is not a reasonable probability that he would have prevailed on direct appeal had appellate counsel raised these claims. Therefore, the Court finds the state court's rejection of Petitioner's ineffective assistance of appellate counsel claim is not contrary to or an unreasonable application of Supreme Court precedent.

Accordingly, the Court RECOMMENDS that Petitioner's claim in ground one be DENIED.

### C.    Claim Two: Insufficient Evidence Supported the Jury's Verdict

In ground two, Petitioner contends there was insufficient evidence to support the jury's verdict finding him guilty of first degree burglary. (ECF No. 16 at 10-17.) He also argues he is factually innocent. Specifically, Petitioner claims that there was exonerating DNA and fingerprint evidence and that the victim's in-court identification was tainted by a suggestive pretrial identification. (*Id.*) Respondent argues this claim should be denied because the state courts properly rejected this claim and because there was sufficient evidence to support Petitioner's conviction. (ECF No. 17 at 13-14.) For the reasons set forth below, the Court agrees with Respondent.

Petitioner presented this claim to the California Supreme Court and it was denied without comment. (Lodgment Nos. 16 and 17.)  Therefore, the Court will look through the silent denial to the last reasoned decision, which is the Court of Appeal's March 22, 2011 opinion.  *Ylst*, 501 U.S. at 804.  The Court of Appeals summarized the evidence that was presented at trial in its discussion of Petitioner's ineffective assistance of appellate counsel claim. (Lodgment No. 15.)  The Court of Appeal stated the victim gave the 911 operator and the police a description of the perpetrator within minutes of the incident.  Based on her description, and descriptions by other witnesses, the police apprehended Petitioner approximately 17 minutes after the incident while he was walking down the street a few blocks from the victim's home.  The court noted the victim testified that she "absolutely" remembered what the perpetrator looked like and identified Petitioner.  The court also stated that Petitioner had emphasized at trial that his fingerprints and DNA were not found at the scene, and that he presented expert testimony on witness suggestibility and false identification.  The Court stated that despite Petitioner's evidence, "the jury believed [the victim]." (*Id.* at 2.)  The Court of Appeal, did not, however, specifically discuss Petitioner's insufficiency of the evidence claim.  Therefore, the Court must independently review the record to determine if the California Supreme Court's summary rejection of this claim was objectively reasonable.  *See Delgado*, 223 F.3d at 982.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  Thus, a state prisoner who alleges the evidence introduced at trial was insufficient to support the findings of the trier of fact states a cognizable federal habeas claim.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  In reviewing an insufficient evidence claim, federal courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does

not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wright v. West,* 505 U.S. 277, 296-97 (1992), *citing Jackson*, 443 U.S. at 326. The court does not re-weigh the evidence, nor may the court "make its own subjective determination of guilt or innocence." *Jackson*, 443 U.S. at 320. Credibility determinations are exclusively the province of the trier of fact. *Id.* at 319, 326. The *Jackson* standard "gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* In order to establish sufficient evidence, the prosecution need not affirmatively "rule out every hypothesis except that of guilt." *Id.* at 326. Even where evidence is "almost entirely circumstantial and relatively weak," it may be sufficient to support a conviction. *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).

In addition, a federal habeas court must apply the *Jackson* standard with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of *Jackson* to the facts of the case. *Id.* at 1275 (quoting 28 U.S.C. § 2254(d)).

In reviewing the record in the light most favorable to the prosecution, the Court concludes a rational jury could have found proof of Petitioner's guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 324. First, the Court finds Petitioner's factual innocence claim fails. Petitioner argues there was exonerating DNA and fingerprint evidence. However, as Respondent accurately points out, the DNA and fingerprint evidence did not prove Petitioner was innocent. The evidence showed only that Petitioner's fingerprints and DNA were not discovered at the scene of the crime. (Lodgment No. 1 at 291, 316-17.) Further, Petitioner has not presented any new evidence to support his actual innocence claim.

Second, the Court finds there was sufficient evidence to support the jury's verdict. At trial, the prosecution presented direct evidence to prove Petitioner was guilty of burglary. The victim testified that on the night of the incident, she was in her apartment, and had just finished taking a shower. (Lodgment No. 1 at 221.) When she opened her bathroom door

she saw someone push the screen off her bedroom window and begin to enter the bedroom through the window. (*Id.* at 221-22.) The victim said Petitioner was lifting himself through the window, and his face was inside the window. (*Id.* at 223.) The victim testified that she looked Petitioner directly in the eyes for approximately ten seconds. (*Id.* at 224, 227-28.) She was about fourteen feet away from Petitioner at the time. (*Id.*) The room was very well lit and nothing obstructed the victim's view of Petitioner's face. (*Id.* at 227-28.) The victim stated she began to scream and Petitioner got scared and ran away. (*Id.* at 222-23.) The victim testified that she "absolutely" remembered what Petitioner looked like. (*Id.* at 224.) The victim identified Petitioner as the person who broke into her apartment. (*Id.* at 224.) The victim also stated that she recalled identifying Petitioner when she testified at the preliminary hearing. (*Id.*)

The victim further testified that after Petitioner backed away from the window, she watched him run away from her apartment. (*Id.* at 229-30.) The victim's neighbor and her landlord responded to her screaming and called 911. (*Id.* at 231.) The victim spoke with the 911 operator and gave a description of the perpetrator to the operator. (*Id.* at 232-33.) She also gave a description to police officers who arrived at her residence about 5 minutes later. (*Id.* at 236.) Based on the description, the police apprehended Petitioner approximately 17 minutes after the incident while he was walking down the street a few blocks from the victim's apartment. (*Id.* at 354-55.)

In addition to the victim's testimony, the prosecution presented testimony from Theresa Nakatani, a witness who was sitting in a car behind the victim's apartment (*Id.* at 271-76) and Officer Herrera, the officer who apprehended Petitioner. (*Id.* at 353.)

Petitioner's defense was that he had been misidentified. (*Id.* at 541.) He presented expert testimony from Mitchell Eisen, who testified on witness suggestibility and false identification. (*Id.* at 373-420.) Petitioner also emphasized that his DNA and fingerprints were not found at the scene of the burglary. (*Id.* at 543-44.) As the Court of Appeal noted, despite the defense evidence, the jury believed the victim.

Contrary to Petitioner's assertion, there was sufficient evidence from which a rational

1    trier of fact could find Petitioner was guilty of burglary beyond a reasonable doubt. *Jackson*,

2    443 U.S. at 324.   Therefore, the Court finds the state court's rejection of Petitioner's

3    insufficient evidence claim was not contrary to or an unreasonable application of clearly

4    established federal law.   Based thereon, the Court RECOMMENDS that Petitioner's claim

5    in ground two be DENIED.

6       **D.    Claim Three: Actual Innocence Claim Warrants an Evidentiary Hearing**

7          In ground three, Petitoner argues an evidentiary hearing is necessary in order to

8    develop the facts in support of his actual innocence claim, which the state courts failed to

9    develop.  (ECF No. 16 at 18.)  Respondent counters that an evidentiary hearing is not

10   required.  (ECF No. 17 at 14.)  The Court agrees with Respondent.

11         AEDPA "substantially restricts the district court's discretion to grant an evidentiary

12   hearing," and prescribes the manner in which federal courts must approach the factual

13   record.  *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999).  As a result, Petitioner's

14   request for an evidentiary hearing is subject to the requirements of 28 U.S.C. § 2254(e)(2).

15   Section 2254(e)(2) provides that where a federal habeas petitioner has failed to develop the

16   factual basis for his claim in the state court, the court shall not hold an evidentiary hearing

17   unless Petitioner shows that the claim relies on: (1) a new rule of constitutional law, made

18   retroactive to cases on collateral review by the Supreme Court, or (2) is based on a factual

19   predicate that could not have been previously discovered through the exercise of due

20   diligence, and (3) the facts underlying the claim would be sufficient to establish by clear and

21   convincing evidence that but for constitutional error, no reasonable factfinder would have

22   found Petitioner guilty of the underlying offense.  28 U.S.C. § 2254(e)(2).

23         Thus, "a district court presented with a request for an evidentiary hearing ... must

24   determine whether a factual basis exists in the record to support the petitioner's claim." *Baja*,

25   187 F.3d at 1078.  If no factual basis exists in the record, the federal court then determines

26   whether the petitioner "failed to develop the factual basis of a claim in State court." *Id.* If

27   the petitioner failed to develop the factual basis in state court, the request must be denied

28   unless he establishes one of the codified exceptions.  *Id.*  If an exception applies, the new

facts asserted, if proven, must entitle the petitioner to relief. *Id.* at 1078-79; *see Williams (Michael) v. Taylor*, 529 U.S. 420 (2000). "[A]n evidentiary hearing is not required on allegations that are 'conclusory and wholly devoid of specifics,' ... [n]or is an evidentiary hearing required on issues that can be resolved by reference to the state court record." *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir.1994) (citations omitted); *see Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir.1998).

Here, Petitioner did not provide the state courts with any new evidence demonstrating he was factually innocent. (*See* Lodgment Nos. 10, 12, and 16.)  Petitioner reiterated his claims that he was misidentified, that the prosecution's evidence was insufficient, and that his DNA and fingerprints were not found at the scene.  However, these are the same arguments he presented at trial.  Petitioner, therefore,  failed to develop in the state courts facts supporting his actual innocence claim.  Further, Petitioner has not provided this Court with any new facts or legal authority to support his claims.  Therefore, the Court finds an evidentiary hearing is not necessary because the Petition can be resolved by reference to the state court record. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  Further, as outlined above, and discussed below, none of Petitioner's claims warrant federal habeas relief.  Therefore, he does not satisfy the exacting AEDPA standards prerequisite to receiving an evidentiary hearing.  Accordingly, the Court RECOMMENDS that Petitioner's request for an evidentiary hearing be DENIED.

### E.   Claim Four: Ineffective Assistance of Trial Counsel

In ground four, Petitioner agues his trial counsel was ineffective due to statements made during closing argument.  (ECF No. 16 at 30.)  Respondent counters that Petitioner fails to establish that his counsel's performance was deficient, or that he was prejudiced, under *Strickland*.  (ECF No. 17 at 15-16.)   As set forth below, the Court agrees with Respondent.

Petitioner argues his counsel improperly conceded the elements of the crime in closing argument.  Specifically, Petitioner takes issue with the following statement:

> [Defense counsel]: "Ladies and Gentlemen, this case, as [the prosecutor] told you -- I agree -- this case is a nightmare.  I feel badly for Ms. Guerrero.  No one

should have to come out of their bathroom and find a man coming into their bedroom. And I'll concede to you, I will tell you right now, this was a burglary. You don't even have to consider that when you back in to deliberate. This was a burglary.

Someone tried to break into her bedroom. It was a burglary, and that person had the intent to commit a crime. The only issue that you have to consider is whether or not [Petitioner] is the person who committed this offense.

(ECF No. 16 at 34 *citing* Lodgment No. 1 at 541-42.)

Petitioner argues his counsel's closing argument relieved the prosecution of its burden of proof and the jury of its duty to deliberate. Petitioner presented this claim to the California Supreme Court, and it was denied without comment. (Lodgment Nos. 16 and 17.) The Court will therefore look through the silent denial to the last reasoned decision, which is the Court of Appeal's March 22, 2011 opinion. *Ylst*, 501 U.S. at 804. The Court of Appeal rejected Petitioner's argument that his trial counsel was ineffective. The Court of Appeal explained:

> [Petitioner] claims trial counsel was ineffective for conceding in closing argument that a burglary had been committed. The record shows counsel's tactic was to argue the case was "simple" and "about a mistaken identification by a woman who thinks that she's doing the right thing and that she's getting a criminal off the street." Counsel did not dwell on the elements of the crime but argued [Petitioner] was not the person who tried to enter Guerrero's bedroom. Given the state of the evidence at trial, [Petitioner] has not shown that counsel lacked a rational, tactical purpose in arguing a crime had been committed but that [Petitioner] was not the perpetrator. (*See People v. Ray* (1996) 13 Cal.4th 313, 349.)

(Lodgment No. 15.)

As stated above, for Petitioner to succeed on a claim of ineffective assistance of counsel, he must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show that counsel's performance was deficient. *Id.* at 687. "This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The "[r]eview of counsel's conduct is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." *Hensley v. Crist*, 67 F.3d 181, 184 (9th Cir.1995); *Strickland*, 466 U.S. at 689. Second, Petitioner must establish the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. This requires a

1  showing that there is a reasonable probability that the result of the proceeding would have

2  been different but for the error.  *Id.* at 694.

3       The United States Supreme Court has emphasized the deference that must be accorded

4  to trial counsel in making closing argument:

5       ... counsel has wide latitude in deciding how best to represent a client, and
        deference to counsel's tactical decisions in his closing presentation is
6       particularly important because of the broad range of legitimate defense strategy
        at that stage. Closing arguments should "sharpen and clarify the issues for
7       resolution by the trier of fact," but which issues to sharpen and how best to
        clarify them are questions with many reasonable answers ... Judicial review of
8       a defense attorney's summation is therefore highly deferential-and doubly
        deferential when it is conducted through the lens of a federal habeas.

9

10  *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (internal citations omitted).

11       Here, trial counsel focused his closing argument on the defense of misidentification.

12  (Lodgment No. 1 at 540-59.)  His counsel argued that Petitioner was not the person who the

13  victim saw entering her window.  He emphasized the lack of DNA and fingerprint evidence

14  and questioned the victim's identification of Petitioner at the perpetrator.  Therefore,

15  counsel's statement conceding that a burglary had been committed, but by someone other

16  than the Petitioner, did not undermine Petitioner's defense.  Indeed it was consistent with

17  Petitioner's claim throughout this case, including the instant Petition, that he was not the

18  person who committed the crime.  Given the evidence presented at trial, the Court finds that

19  it was not unreasonable for trial counsel to state in closing argument that a burglary had been

20  committed, but by someone else.  Further, the Court finds no "reasonable probability" that

21  a different closing argument would have made a significant difference.  Counsel's statement

22  did not diminish Petitioner's defense that the victim identified the wrong person.  Nor did

23  it relieve the prosecution from its burden to prove Petitioner was the perpetrator, or the jury's

24  duty to determine whether he was or not.  In sum, Petitioner fails to establish that counsel's

25  closing statement was deficient and that he was prejudiced by the alleged error.  Therefore,

26  the Court finds the state courts' rejection of Petitioner's ineffective assistance of trial counsel

27  claim was objectively reasonable.  Accordingly, the Court RECOMMENDS that Petitioner's

28  claim in ground four be DENIED.

**F.    Claim Five: Violation of Right to an Impartial Jury**

In ground five, Petitioner argues he is entitled to a new trial because he was denied his right to a fair trial by an impartial jury. (ECF No. 16 at 40.) Petitioner asserts two claims of error: (1) jury composition, and (2) jury misconduct. (*Id.* at 43-53.) Respondent contends Petitioner has failed to provide adequate evidence to support either of his claims. (ECF No. 17 at 16-18.) For the reasons stated below, the Court finds Petitioner is not entitled to habeas relief.

Petitioner presented this ground for relief to the California Supreme Court, and it was summarily denied. (Lodgment Nos. 16 and 17.) Therefore, the Court will look through to the Court of Appeal's March 22, 2011 opinion. *Ylst*, 501 U.S. at 804. The Court of Appeal rejected Petitioner's argument, stating:

> Finally, [Petitioner] argues he did not have a fair trial due to the composition of the jury and there was juror misconduct. He has not provided any relevant evidentiary support for this claim.

(Lodgment No. 15.)

The Superior Court also addressed Petitioner's jury misconduct claim in its denial of Petitioner's habeas petition. The court stated Petitioner had failed to provide adequate evidence to support his claim. The court went on to find:

> The only documentation Petitioner provided was an excerpt of the reporter's transcript, in which his trail attorney requests juror identifying information and the trial judge denies the request. As best can be determined from the partial transcript, it appears neither the Court nor the defense ever asked the jurors during voir dire if they had been the victim of a crime. (RT706:10-16). . . . The trial judge determined that failure to answer a question that was never asked cannot satisfy a showing of good cause to believe misconduct occurred. The trial judge's reasoning was sound.

(Lodgment No. 11 at 6.)

**a.    Composition of the Jury**

Petitioner's first argument is that he was "denied his right to a jury composed of a representative cross section of the community (*Batson/Wheeler*)." (ECF No. 16 at 43-45.) The Court interprets this as a claim that there was a *Batson* error. In support of this claim, Petitioner argues the prosecution used its peremptory challenge to strike the only one African-American juror on the panel. Petitioner argues that the prosecutor did not provide

1   a plausible or credible justification for removing the juror.  (*Id.* at 44-45.)

2          The Equal Protection Clause of the Fourteenth Amendment to the United States

3   Constitution prevents a prosecutor from systematically eliminating potential jurors on the

4   basis of racial identity.  *Batson v. Kentucky*, 476 U.S. 79 (1986).  In *Purkett v. Elem*, 514

5   U.S. 765 (1995), the United States Supreme Court outlined the steps a court must follow in

6   conducting a *Batson* analysis:

7              Under our *Batson* jurisprudence, once the opponent of a peremptory
       challenge has made out a prima facie case of racial discrimination (step one),
8      the burden of production shifts to the proponent of the strike to come forward
       with a race-neutral explanation (step two).  If a race-neutral explanation is
9      tendered, the trial court must then decide (step three) whether the opponent of
       the strike has proved purposeful racial discrimination.

10

11  *Id.* at 767-68.  *See also Mitleider v. Hall*, 391 F.3d 1039, 1047 (9th Cir. 2004).  "In deciding

12  whether the defendant has made the requisite showing [of a prima facie case of racial

13  discrimination], the trial court should consider all relevant circumstances."  *Batson*, 476 U.S.

14  at 96.  A state court's determination as to whether a prima facie case has been made is a

15  factual determination entitled to a presumption of correctness.  *Tolbert v. Page*, 182 F.3d

16  677, 685 (9th Cir. 1999).

17         The Court notes that Petitioner has failed to provide any evidentiary support for his

18  claim.  However, a review of the record demonstrates that the African-American juror was

19  not struck for an improper purpose.  The records shows that Petitioner's trial counsel raised

20  a *Batson*/*Wheeler* challenge during voir dire.  (Lodgment No. 2 at 106.)  The trial court

21  denied the motion.  (*Id.* at 108.)  The court found Petitioner failed to make a prima facie

22  showing of race discrimination.  (*Id.*)  In addition, the prosecutor asserted the African-

23  American juror was struck because he was involved in the practice of law.  (*Id.*)  The

24  prosecution had previously struck another juror for the same reason.  (*Id.*)  In light of the

25  record, the Court finds  the state courts' denial of Petitioner's *Batson* claim is neither

26  contrary to or an unreasonable application of clearly established Supreme Court law.  It is

27  also not based on an unreasonable determination of the facts.   Therefore, Petitioner is not

28  entitled to relief as to this claim.

### b.    Juror Misconduct

Petitoner's second argument is that three female jurors committed misconduct by failing to give truthful answers during voir dire.  (ECF No. 16 at 45-53.)  Specifically, Petitioner claims all the jurors were asked whether or not they had been the victim of a crime. (*Id.* at 52.)  Petitioner alleges three jurors failed to disclose that they were victims of some type of sexual assault.  (*Id.*)  Petitioner further claims the jurors relied on their prior experiences to reject the defense theory of mistaken identification.

A criminal defendant has a federal constitutional right to an impartial jury.  *Smith v. Phillips*, 455 U.S. 209, 217 (1982).  In the context of juror impartiality, due process means a juror capable and willing to a decide a case solely on the evidence presented, and a trial judge who is careful to prevent prejudicial occurrences.  *Id.*  In a habeas action regarding juror impartiality, the state court's finding of impartiality is a finding of fact that is accorded a presumption of correctness.  *Wainwright v. Witt*, 469 U.S. 412, 429 (1985); *Patton v. Yount*, 467 U.S. 1025, 1036 (1984);

The evaluation of a claim of juror misconduct proceeds according to a two-part test: (1) whether a juror failed to answer honestly a material question on voir dire; and (2) whether a correct answer would have provided a valid basis for a challenge for cause. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).

Again, the Court notes that Petitioner has failed to provide any evidentiary support for his claim.  Moreover, the Court finds Petitioner's claim is not supported by the record. Following his trial, Petitioner moved for release of juror contact information and for a new trial based on jury misconduct.  (Lodgment No. 3 at 125; 149.)  The trial court denied the motions.  (Lodgement No. 1 at 708.)  The court found that Petitioner failed to make a prima facie showing justifying release of the juror information, and further found that there was no jury misconduct.  (Lodgment No. 1 at 706, 722.)  The trial court stated that the question 'Have you been the victim of a crime?,' "was thought to be asked," but "was, in fact, not asked." (*Id.* at 706.)  The court further stated the "failure to respond to a question that wasn't asked" was not sufficient to support a reasonable belief that juror misconduct occurred. (*Id.*)

This Court has also reviewed the transcript of the voir dire proceedings, and no one asked the potential jurors if they had been victims of a crime. (*See* Lodgment No. 2.) Thus, there is no evidence that any juror lied or improperly concealed information during voir dire. As such, he has failed to establish the first prong of the *McDonough* test. Given the record, the Court finds the state courts' denial of Petitioner's jury misconduct claim is neither contrary to or an unreasonable application of federal law. It is also not based on an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to relief as to this claim.

Because Petitioner has failed to provide adequate support for his claims, and because they are not supported by the record, the Court finds Petitoner is not entitled to habeas relief on his claim that he was denied the right to an impartial jury. Accordingly, the Court RECOMMENDS that Petitioner's claim in ground five be DENIED.

### G.    Claim Six: The State Courts' Denials of Petitioner's State Habeas Petitions Were Contrary to or an Unreasonable Application of Federal Law

In ground six, Petitioner claims generally that the state courts' denials of his habeas petitions were contrary to or an unreasonable application of Supreme Court precedent, or were based on an unreasonable determination of the facts in light of the evidence presented. (ECF No. 16 at 56-65.) Respondent does not separately address this claim.

The Court has addressed this claim in its discussion of each of Petitioner's other grounds for relief. As fully explained above, the Court finds that the state courts' rejection of Petitioner's habeas claims were not contrary to or an unreasonable application of federal law. Therefore, for the aforementioned reasons, the Court RECOMMENDS that Petitioner's claim in ground six be DENIED.

### H.    Claim Seven:  The Trial Court Erroneously Admitted Victim's In-Court Identification

In ground seven, Petitioner claims the trial court erred by admitting the victim's in-court identification of Petitioner. (ECF No. 16 at 67-73.) Petitioner argues the victim's identification testimony was not sufficiently independent of her exposure to an unduly suggestive pretrial identification.   Respondent counters that the state courts reasonably rejected this claim. (ECF No. 17 at 18-19.) For the reasons stated below, the Court agrees with Respondent.

Petitioner presented this claim to the California Supreme Court on direct appeal, and it was summarily denied. (Lodgment Nos. 8 and 9.) The Court will therefore look through the silent denial to the Court of Appeal's October 23, 2009 opinion. *Ylst*, 501 U.S. at 804. The Court of Appeal rejected Petitioner's argument that the trial court should not have admitted the victim's in-court identification. The Court of Appeal first noted that the trial court had suppressed the witness's identification of Petitioner at the curbside showup as unduly suggestive because the police told her that she would be viewing a suspect who matched her description and who was on parole for burglary. (Lodgment No. 7 at 5-6.) The Court of Appeal then set forth the relevant legal standards, and identified the five factors that courts are to consider in determining whether an in-court identification may be admitted at trial. (*Id.* at 6-7.) The court then analyzed each factor as follows:

> The first two factors are "'the opportunity of the witness to view the criminal at the time of the crime'" and "'the witness' degree of attention.'" (*Cooks*, *supra*, 141 Cal.App.3d at p. 306.) Guerrero's opportunity to view the perpetrator was established by her testimony that she had looked him in the eyes for approximately 10 seconds at a distance of approximately 14 feet in a well lit room. FN4 Her degree of attention was established by her testimony that they had a "good stare-down" and "locked eyes," and that she was "trying to pay attention to his face, considering that was what I needed to identify him with." The first two factors thus fall in favor of establishing that Guerrero's in-court identification of [Petitioner] had an origin independent of the curbside showup procedure.

> FN4. [Petitioner] argues that the 10 seconds available to Guerrero to observe the perpetrator "is certainly a significant time reduction from the 30 to 60 seconds the California Supreme Court found sufficient in . . . *Kennedy*, *supra*, 36 Cal.4th at p[age] 610." This argument is not persuasive because *Kennedy* did not state that 30 to 60 seconds was a minimum time frame needed for a witness to accurately identify a perpetrator. On the contrary, *Kennedy* merely mentioned the 30 to 60 seconds that the witness spent in eye-to-eye contact with the perpetrator as one relevant fact in its analysis. (*Kennedy*, *supra*, 36 Cal.4th at p. 610.) Here, under the circumstances of Guerrero's close range encounter with the man attempting to enter her home, we conclude 10 seconds was sufficient for Guerrero to form a memory of the intruder's face.

> The third factor is "'the accuracy of the witness' prior description of the criminal.'" (*Cooks*, *supra*, 141 Cal.App.3d at p. 306.) In arguing this factor, [Petitioner] relies on trial testimony about the description of the suspect contained in the police dispatches immediately after the crime occurred. In those dispatches, the suspect is described as a white male in his 20's, with a shaved head, possibly blond, possibly 5'10", of medium build, wearing white shorts and no shirt. We note that it is not clear how much of the information in the police dispatch was based on Guerrero's statements to police, as opposed

to the statements of another witnesses [sic], such as Nakatani. However, to the extent that the police dispatch description was based on Guerrero's statements, the description appears to have been accurate in many respects. According to the testimony at trial, [Petitioner's] California identification card state that he weighs 180 pounds and stands 5'11" tall. Further, [Petitioner] had "very short," "sandy"-colored hair when he was apprehended and was wearing white shorts and no shirt. The age of the suspect contained in the police dispatch was the central detail that did not precisely match [Petitioner's] description, as [Petitioner] was 36 years old on the date of the crime instead of in his 20's. We conclude that because the police dispatch description was based at least in part on Guerrero's statements to police before she witnessed the curbside showup, and that description was a substantially accurate description of [Petitioner,] the factor of "'the accuracy of the witness' prior description of the criminal'" (*Cooks*, at p. 306) weighs in favor of establishing an independent origin for Guerrero's in-court identification of [Petitioner].

The final two factors, i.e., "'the level of certainty demonstrate by the witness at the confrontation'" and "'the length of time between the crime and confrontation'" (*Cooks*, *supra*, 141 Cal.App.4th at p. 306), also tend to establish that Guerrero's in-court identification of [Petitioner] had an independent origin. There was no indication in Guerrero's testimony that she was uncertain about her identification of [Petitioner] on the night of the crime, and when questioned at trial about whether she identified [Petitioner] based on what the police had told her about him being a suspect and being on parole for a similar crime, Guerrero testified, "Absolutely not. It was based on the person that I saw entering into my house." Further, the curbside showup occurred at approximately 8:19 p.m., which was less than an hour after the crime occurred, when the perpetrator's face was still fresh in Guerrero's mind, lessening the risk that the suggestive pretrial identification procedure caused her to believe that [Petitioner] was the perpetrator of the burglary.

Based on all these factors, we conclude the trial court did not err in admitting Guerrero's in-court identification of [Petitioner] at trial. . . .

(Lodgment No. 7 at 7-10.)

In *Neil v. Biggers*, 409 U.S. 188, 196-97 (1972), the United States Supreme Court recognized that even if a pretrial identification procedure is unduly suggestive, a witness's in-court identification may nevertheless be admissible. The Court set forth the following factors that courts are to consider in determining whether an identification should be admitted: (1) the witness's opportunity to view the accused at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Id.* at 199-200.

Here, the Court finds the Court of Appeals' decision was not contrary to or an unreasonable application of federal law. In reaching its decision, the Court of Appeal

1   identified and applied the relevant United States Supreme Court precedent by citing the *Neil*

2   factors. (*See* Lodgment No. 7 at 7 (citing *People v. Cooks*, 141 Cal.App.3d 224 and noting

3   that *Cooks* quotes *Neil v. Biggers*, 409 U.S. 188 (1972).)  Moreover, the Court finds the

4   Court of Appeal reasonably applied those factors to the facts of Petitioner's case.  The victim

5   testified that she looked Petitioner directly in the eyes for 10 seconds.  (Lodgment No. 1 at

6   224, 227.)  Petitioner was about 14 feet away from the victim at the time, nothing obstructed

7   her view of his face, and the lighting was "very good."  (*Id.* at 223, 227-28.)  The witness

8   stated she "made very good eye contact" with Petitioner and had a "good stare-down" with

9   him. (*Id.* at 224, 227.)  The victim accurately described the Petitioner's skin, hair, and eyes.

10  (*Id.* 232-33.)  She also testified that she "absolutely" remembered what the perpetrator

11  looked like.  (*Id.* at 224.)  When the victim was asked on cross examination if her

12  identification of Petitioner was influenced by the comments from the police regarding

13  Petitioner's parole status, she stated: "Absolutely not.  It was based on the person that I saw

14  entering into my house."  (*Id.* at 264.)  Finally, a fairly short period of time had passed

15  between the incident and when the victim identified Petitioner at the curbside showup. (*Id.*

16  at 28.)

17        Given these circumstances, i.e., that the victim was able to directly view the

18  perpetrator's face for 10 seconds, that she promptly described his appearance to the police,

19  that her description matched Petitioner, and that she identified Petitioner as the perpetrator

20  less than an hour after the burglary, and later confidently identified him at trial, the Court

21  concludes that the Court of Appeal reasonably determined that the victims's in-court

22  identification of Petitioner was reliable.[2]  Therefore, the Court finds the state courts'

23  rejection of Petitioner's claim regarding the victim's in-court identification is not contrary

24  to or an unreasonable application of clearly established Supreme Court precedent.

25        Accordingly, the Court RECOMMENDS that Petitioner's claim in ground seven be

26

27        _____

28        [2] The Court notes that the jury heard testimony from the defense expert who testified regarding
    various factors that render eyewitness identifications unreliable.  (*See* Lodgment No. 1 at 373-421.)
    Therefore, the jury was aware of the defense theory that the victim's identification of Petitioner was not
    reliable.

DENIED.

## I. Claim Eight: The Trial Court Abused its Discretion by Not Striking Petitioner's Prior Strike Convictions

In ground eight, Petitioner argues the trial court abused its discretion by not striking his prior strikes for purposes of sentencing.  (ECF No. 16 at 73-76.)  Following his conviction, Petitioner filed a *Romero*[3] motion requesting that the court strike his prior convictions.  (Lodgment No. 3 at 287-289.)  The court denied the motion.  (*Id.* at 326; Lodgment No. 1 at 806.)  Petitioner argues the trial court acted arbitrarily because it relied exclusively on his past criminal history and present offense and did not give him individualized consideration as required by California case law.  Respondent argues that the trial court properly denied his motion.  (ECF No. 17 at 20.)  For the foregoing reasons, the Court finds Petitioner is not entitled to habeas relief.

Petitioner presented this claim to the California Supreme Court on direct appeal, and it was denied without comment.  (Lodgment Nos. 8 and 9.)  Therefore, the Courts looks through the silent denial to the Court of Appeal's October 23, 2009 opinion.  *Ylst*, 501 U.S. at 804.  The Court of Appeal rejected Petitioner's claim, stating:

> We conclude the trial court acted well within its discretion to deny [Petitioner's] motion to strike his prior strikes.  Here, the record shows that the trial court reasonably exercised its discretion and stated its reasons as required. It considered the nature and date of [Petitioner's] prior strikes and the nature of his current offense.  It was within reason for the trial court to conclude that because of the facts of this case and the nature and dates of [Petitioner's] prior offenses, he was not wholly "outside the scheme's spirit" (*Williams*, *supra*, 17 Cal.4th at p. 161), and that it should not strike [Petitioner's] prior strikes.FN5 We cannot conclude that the trial court's refusal to strike [Petitioner's] prior strikes was "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at p. 377.)
>
> FN5. [Petitioner] argues that the trial court abused its discretion in refusing to strike his prior strike because it focused solely on

---

[3] In *People v. Superior Court (Romero)*, 13 Cal.4th 497 (1996), the California Supreme Court held that trial courts have discretion to dismiss prior strike convictions in the interest of justice under California Penal Code § 1385(a).  When presented with a motion to strike a prior conviction, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the ... spirit [of the Three Strikes law], in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." *Id.* at 161.

> [Petitioner's] criminal history and the present offense in deciding whether to strike the prior strikes and did not explicitly consider "the cause of those crimes" and [Petitioner's] "non-violent conduct." We reject this argument. The trial court's focus on [Petitioner's] criminal history and the present offense is consistent with our Supreme Court's statement that a court should focus on "the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects." (*Williams, supra,* 17 Cal.4th at p. 161.)

(Lodgment No. 7 at 12.)

Federal habeas relief is not available for violation of state law or for alleged errors in the interpretation or application of state law. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). Here, Petitioner's claim that the trial court abused its discretion in denying his *Romero* motion concerns only state sentencing law and does not implicate a federal constitutional right. Therefore it is not cognizable on federal habeas review. *See e.g. Brown v. Mayle,* 283 F.3d 1019, 1040 (9th Cir. 2002) (federal habeas challenge to the denial of a *Romero* motion is a state law claim that is barred from review in a federal habeas proceeding), *vacated on other grounds, Mayle v. Brown,* 538 U.S. 901 (2003); *Souch v. Schaivo,* 289 F.3d 616, 622-23 (9th Cir. 2002) (petitioner's challenge to trial court's exercise of discretion under state sentencing law fails to state federal habeas claim).

Even if Petitioner could show that the trial court erred in imposing his sentence, "[a]bsent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." *Christian v. Rhode,* 41 F.3d 461, 469 (9th Cir. 1994). Here, the record indicates that the trial court understood its discretion to strike the prior convictions pursuant to *Romero,* but declined to do so. The court reviewed Petitioner's criminal record, which included two prior strike convictions for residential burglary, a felony drug offense, a string of misdemeanors, and parole and probation violations. (Lodgment No. 1 at 806; Lodgment No. 3 at 229-232.) The court noted that the crime for which Petitioner was being sentenced was the same crime as his prior strikes. (Lodgment No. 1 at 806.) The Court of Appeal found no abuse of discretion on direct review, stating that it was not unreasonable for the trial court to determine that Petitioner fell within the spirit of the Three Strikes law. (Lodgment No. 7 at 12.) Given the record, the

1  Court finds Petitioner cannot show that the trial court's denial of his motion to strike

2  amounted to fundamental unfairness warranting federal habeas relief.  Therefore, the state

3  court's rejection of Petitioner's abuse of sentencing discretion claim was not contrary to or

4  an unreasonable application of federal law.

5       Accordingly, the Court RECOMMENDS Petitioner's claim in ground eight be

6  DENIED.

7  **III.    CONCLUSION AND RECOMMENDATION**

8       The Court submits this Report and Recommendation to United States District Judge

9  Anthony J. Battaglia under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d) of the United

10  States District Court for the Southern District of California.  For all the foregoing reasons,

11  **IT IS HEREBY RECOMMENDED** that the habeas Petition be **<u>DENIED</u>** in its entirety on

12  the ground the Petitioner's custody violates no federal right.

13       **IT IS FURTHER RECOMMENDED** the Court issue an Order (1) approving and

14  adopting this Report and Recommendation and (2) directing that judgment be entered

15  denying the Petition.

16       **IT IS HEREBY ORDERED** no later than **<u>March 29, 2013</u>**  any party to this action

17  may file written objections with the Court and serve a copy on all parties.  The document

18  should be captioned "Objections to Report and Recommendation."

19       **IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the

20  Court and served on all parties no later than ten (10) days from service of Petitioner's filed

21  Objections.  The parties are advised that failure to file objections within the specified time

22  may waive the right to raise those objections on appeal of the Court's Order.  *See Turner v.*

23  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir.

24  1991).

25       IT IS SO ORDERED.

26  DATED:  February 27, 2013

27                                          DAVID H. BARTICK

28                                          United States Magistrate Judge